# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| ROSLYN SYAS, individually and on behalf of all others similarly situated, | **Case No. 4:21-cv-01532** FLSA Collective Action |
| v. | Judge Sim Lake |
| TEXAS CHILDREN'S HEALTH PLAN, INC. | |

### PLAINTIFF SYSAS'S UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT AND TO DISMISS WITH PREJUDICE

**A.    SUMMARY**

The Parties have reached a Settlement Agreement in this Fair Labor Standards Act (FLSA) case. The Settlement Agreement represents the culmination of over 1.5 years of investigation, litigation, and negotiation. Once approved, it will provide meaningful relief to Plaintiffs.

The Settlement Agreement is a compromise of disputed claims and does not constitute an admission by Texas Children's Health Plan, Inc. (TCHP) of any violation of any federal, state, or local statute or regulation; of any violation of any of Plaintiffs' rights; or of any duty owed by TCHP to Plaintiffs. TCHP expressly denies Plaintiffs' claims and disputes Plaintiffs' entitlement to recover any damages; and disagrees with Plaintiffs as to, for example and without limitation: the number of hours Plaintiffs worked; whether TCHP properly classified Plaintiffs as nonexempt under the FLSA; whether TCHP's alleged FLSA violations were made in good faith and on reasonable grounds; and whether TCHP's alleged FLSA violations were willful.

The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation. For these reasons, Plaintiffs request the Court approve the Parties' Settlement Agreement and dismiss Plaintiffs' claims with prejudice.

## B. THE SETTLEMENT AGREEMENT

The Settlement Agreement (Exhibit A) has been filed separately under Seal as agreed by the Parties.

## C. FACTUAL BACKGROUND

Syas worked as an Eligibility Specialist for TCHP. She brought this lawsuit as a putative collective action on May 8, 2021. ECF No. 1. Syas claimed that she and other Eligibility Specialists were misclassified as exempt from the FLSA and were paid a salary without any overtime when they worked over 40 hours in a week.

TCHP denied, and continues to deny, Syas's claims, including her claim she is owed additional pay. Following the Court's granting of the Parties Joint Motion for Notice of Conditional Certification, Notice issued and, during the prescribed period, five additional individuals consented to join the lawsuit, for a total of six opt-ins. ECF No. 17.

## D. ARGUMENT & AUTHORITIES

### 1. The Parties have reached a formal settlement agreement.

Syas requests, and TCHP does not oppose, the Court enter an order approving the Settlement Agreement, which has already been agreed upon and executed by the Parties. All Plaintiffs agree to the settlement, agree to be bound by the Settlement Agreement, and seek dismissal with prejudice of all claims asserted in this litigation. The Fifth Circuit has recognized the res judicata effect of a court-approved settlement of FLSA claims, where "a bona fide dispute of both law and fact was involved in the litigation, and the proposed

settlement agreed upon was fair and equitable." *Jarred v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1974). Here, a bona fide dispute exists between the Parties—specifically, whether Plaintiffs were improperly classified as exempt, whether TCHP failed to properly compensate Plaintiffs under the FLSA, and whether Plaintiffs were entitled to additional overtime.

Under the Settlement Agreement, half of each Plaintiff's individual settlement amount will be characterized as wages and the other half as liquidated damages and interest for tax withholding and reporting purposes. The settlement amounts have been allocated to each Plaintiff based on their respective pay rates and estimates of their time worked. In addition to the settlement payment, TCHP will pay the employer's portion of any payroll taxes due. Plaintiffs will release their FLSA claims. In exchange for the additional compensation provided by a service award, only Syas will provide a more general release for employment claims she may have against TCHP.

**2. The settlement represents a reasonable compromise of this litigation.**

Syas and Plaintiffs believe the terms of the settlement are fair and equitable. The settlement and Settlement Agreement take into account the number of hours the Opt-In Plaintiffs allegedly worked and the amount of unpaid overtime to which the Opt-In Plaintiffs allege they are entitled. The settlement amounts have been allocated to each Plaintiff and class member proportionally based on their respective pay rates and estimates of their time worked, based on time and payroll data provided by TCHP regarding each Plaintiff. Plaintiffs used this discoverable wage data to determine the individual amount allocated to Syas and each Opt-In Plaintiff, and represent that the allocations are fair and equitable.

The settlement was reached after the Parties and their counsel attended mediation with former Texas District Judge Susan Soussan on July 6, 2022. The Parties mutually selected Judge Soussan due to her knowledge and experience in employment matters, including cases arising under the FLSA.

In addition to their mediation efforts with Judge Soussan, Plaintiffs were represented by experienced counsel. Plaintiffs' counsel, Matthew S. Parmet, has served as lead or co-lead counsel in numerous wage-and-hour actions and has successfully recovered unpaid overtime and associated damages on behalf of many workers, including many large-scale wage-and-hour collective and class actions. *See*, *e.g.*, Ex. B-2, Select Wage-and-Hour Settlements. TCHP's counsel has extensive experience in defending employers in all manner of employment law issues, including FLSA claims. TCHP's counsel is experienced and aggressive, and they expended great effort in defending their client.

Because Plaintiffs are represented by experienced counsel, the Court may rely upon their counsel's judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Plaintiffs' counsel's experience in, and knowledge of, wage-and-hour cases has been noted by various courts. *Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738, at *4 (W.D. La. Feb. 25, 2022) ("Plaintiffs' counsel is well known to the Court and has prosecuted many such [wage-and-hour] claims with similar professionalism and skill."), *adopted by* 2022 WL 741698 (W.D. La. Mar. 10, 2022); *Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819, at *2 (W.D. La. Feb. 13, 2019) ("This case has been litigated by competent lawyers on each side who enjoy great respect in their field from both sides of the aisle. Counsel for Plaintiff

has appeared multiple times in this Court with success on most, if not all, occasions."), *adopted by* 2019 WL 1446481 (W.D. La. Mar. 29, 2019).

Plaintiffs' counsel agrees the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Plaintiffs in light of the procedural posture of the case, the litigation risks, and the litigation costs to Plaintiffs. Ex. B, Parmet decl., at § D. The Parties have engaged in arm's-length and extended settlement negotiations. Ex. B, Parmet decl., at § D. Because the settlement is a fair and reasonable compromise given the considerations outlined above, the Court should approve the settlement.

The Fifth Circuit has set out six factors for evaluating settlement proposals: (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

### 2.1. There was no fraud or collusion in arriving at the settlement. (Factor 1.)

The settlement is a product of the extended negotiations of the Parties, including arms-length negotiation of counsel and mediation with Judge Soussan. There was no fraud or collusion by any participant. Ex. B, Parmet decl.

### 2.2. The case was settled after significant litigation. If not resolved, further, extensive litigation would follow. (Factors 2-4.)

This case was settled after substantial investigation and work by the Parties and their counsel. The work undertaken by Plaintiffs and Plaintiffs' counsel included:

- Investigation of TCHP and its management and corporate structure;

- Review of Department of Labor database and records;

- Review of court records for similar or related cases involving TCHP and its management and ownership;

- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;

- Filing and serving Plaintiff's original complaint;

- Negotiating certification of the collective and preparing collective certification documents (unused in light of settlement);

- Drafting and sending Plaintiff's disclosures and expert designation;

- Reviewing Plaintiff's documents and production;

- Interviewing Plaintiff and Opt-in Plaintiffs;

- Reviewing TCHP's production, including payroll and time documents and data;

- Analyzing and processing data for Plaintiffs' payroll, including creating a damage model for the data;

- Attending mediation; and

- Negotiating and finalizing the Parties' Settlement Agreement and approval documents.

If the case were not settled, there would be extensive work to come, including written discovery to and from all Parties and associated discovery disputes, depositions of both sides, dispositive motions, and questions regarding applicability of the FLSA, TCHP's exemption defense, Plaintiffs' damages, TCHP's good faith and willfulness, and decertification.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiffs in particular) recognized that their settlement represented a compromise of the range and certainty of their damages.

### 2.3. The participants agree settlement is in the best interest of Plaintiffs and the collective.

Finally, that this settlement in the best interest of Plaintiffs is an opinion shared by both Plaintiffs and their counsel. Ex. B, Parmet decl.

### 3. The Court should allow a service award for the Representative Plaintiff.

The terms of the settlement allow the Representative Plaintiff, Syas, to receive a service award of $3,000, to be paid from the gross settlement amount for he roles in initiating the investigation and litigation of this matter, serving as a class representative, responding to counsel's questions, providing documents, reviewing discovery responses and data, participating in settlement discussions, reviewing the settlement, and otherwise assisting counsel.

Courts routinely approve incentive awards to compensate class representatives for the services they provided and the risks they incurred during the course of the class action litigation. *See, e.g.*, *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (approving $10,000 incentive award to each named plaintiff); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (same); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 incentive award to each named plaintiff). Incentive awards are intended to reflect the substantial service and risk provided by a lead plaintiff, and can often be substantial. *See, e.g., Sanders v. MPRI, Inc.,* No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) (approving incentive awards to helpful plaintiffs of up to $14,300); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No.

09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving incentive award of $10,000 as being "well within the range of reasonable incentive awards"); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $50,000); *Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862, *16 (N.D. Cal. 2007), aff'd, 331 Fed.Appx. 452 (9th Cir. 2009) (approving $25,000 incentive awards to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 incentive award to lead plaintiff).

> **4.    Plaintiffs' attorney fees and litigation expenses are part of the agreement between the Parties.**

A portion of the settlement is separately negotiated and allocated to the payment of Plaintiffs' attorneys' fees and case expenses, as set in Plaintiffs' continent fee contract with their counsel. It is entirely appropriate for the issue of attorneys' fees to be settled by the parties themselves. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

Although the Parties have requested Court approval of the settlement, recent authority has increasingly questioned whether a court is required to (or even has the power to) examine or approve of attorneys' fees in an FLSA settlement. *E.g.*, *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1028 (8th Cir. 2019).[1] In *Barbee*, the Eighth Circuit concluded that not only was the approval of attorneys' fees not required, but that "the district court's authority [over a wage settlement] did not extend beyond concluding the merits settlement was satisfactory." 927

---

[1] There has been a growing trend of cases finding that judicial approval of any portion of an FLSA settlement is not required or appropriate, absent special circumstances. *E.g.*, *Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-cv-00019-WJ-SCY, 2020 WL 3085921, at *3-4 (D.N.M. Jun. 10, 2020).

F.3d at 1027. The Eighth Circuit found the parties' agreement on the issue was conclusive unless there was some reason to believe the fees had some "bearing on whether the employer had adequately paid its employees in a settlement." *Id.*

Cases declining to review attorneys' fees are in line with the actual language of the FLSA, which does not require the approval of attorneys' fees. *See* 29 U.S.C. § 216. "[T]he FLSA's underlying purpose" is, after all, "protecting workers' rights," not ensuring defendants have fairly compensated plaintiff's counsel. *Barbee*, 927 F.3d at 1027 (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)) (internal quotation marks omitted). As a result, "[t]he Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." *Bench v. Cheyenne Logistics, LLC*, No. 4:14-cv-1327, 2016 WL 2997591, at *3 (E.D. Mo. May 25, 2016) (quotation omitted).

The logic of *Barbee* and similar cases applies in both collective actions and individual cases. Unlike Rule 23 Class actions, the review of FLSA settlements comes from the need to protect the workers before the court, not in ensuring absent class members are treated fairly. *See Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781 (N.D. Okla. Jan. 4, 2019); *see also* Fed. R. Civ. P. 23(e)(2) (requiring approval only "[i]f the proposal would bind class members"). "Accordingly, despite discussion of attorney fees in th[is] joint motion, this Court need not review that aspect of the[ ] motion." *Loveless v. Ecotech, LLC*, No. 4:19-cv-02698-SNLJ, 2020 WL 1032239, at *1 (E.D. Mo. Mar. 3, 2020).

Plaintiffs note, however, that the attorneys' fees in this case are in line with Fifth Circuit precedent. In FLSA cases such as this, the "customary contingency" in the Fifth Circuit is

within the range of 35% to 40%.[2] *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001);

*see also*, *e.g.*, *In re Bayou Sorrell Class Action*, 2006 WL 3230771, at *5 ("40% fees have been

awarded in similar [class] cases by Louisiana Federal District Courts.").[3]

For these reasons, attorneys' fees of 40% of the gross recovery by Plaintiffs is

reasonable and necessary. Plaintiffs' counsel also seeks reimbursement of their advanced

---

[2] The Fifth Circuit notes this was the customary fee for cases "against the government," but Plaintiffs' counsel does not believe this distinction to be material.

[3] *E.g.*, *Cason v. EOG Resources, Inc.*, No. 4:20-cv-02189, ECF No. 26 (S.D. Tex. Jul. 6, 2021) (Lake, J.) (approving attorneys' fees of 40% of gross recovery in FLSA case); *McDaniel v. KNM Holdings, LLC*, No. 4:21-cv-00599, ECF No. 22 (S.D. Tex. Jul. 20, 2022) (Hanks, J.) (same); *Kitterman v. Wood Gp. PSN, Inc.,* NO. 2:19-cv-00233, ECF No. 87 (S.D. Tex. Feb. 14, 2022) (Morales, J.) (same); *Paredes v. CNC Oilfield Servs., LLC*, No. 5:20-cv-00600-FB-RBF, ECF No. 49 (W.D. Tex. Sept. 8, 2021) (same); *Malone v. Arc Inspection Servs., LLC*, No. No. 7:19-cv-00296-DC-RCG, ECF No. 49 (W.D. Tex. Jan. 12, 2021) (same); *Night v. Energy Profs. Gp., LLC*, No. 4:18-cv-01103, ECF No. 92 (S.D. Tex. Apr. 15, 2020) (Eskridge, J.) (same); *Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv -02698, ECF No. 30 (S.D. Tex. Aug. 7, 2019) (same); *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv -00167, ECF No. 35 (W.D. Tex. Feb. 21, 2019) (same); *Brite v. Great Plains Analytical Servs., Inc.*, No. 7:18-cv -00153, ECF No. 24 (W.D. Tex. Feb. 12, 2019) (same); *Sarabia v. Spitzer Indus., Inc.*, No. 4:17-cv -02092, ECF No. 32 (S.D. Tex. May 24, 2018) (same); *Baker v. DrilTech, LLC*, No. 6:16-cv-00309-SMH-CBW, ECF No. 36 (W.D. La. May 15, 2018) (same); *Matthews v. Priority Energy Svcs., LLC*, No. 6:15-cv-00448-RWS-KNM, ECF No. 148 (E.D. Tex. Apr. 20, 2018), *adopted by* ECF No. 149 (E.D. Tex. May 11, 2018) (same); *Daniels v. Prod. Mgmt. Indus., LLC*, NO. 6:15-cv-02567-UDJ-PJH, ECF No. 66 (W.D. La. Apr. 20, 2018), *adopted* ECF No. 67 (W.D. La. May 3, 2018) (same); *Johnson v. Pat Williams Constr., LLC*, No. 1:17-cv-00591-JTT-MLH, ECF No. 36 (W.D. La. Mar. 16, 2018) (same); *Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (same); *Crow v. ProPetro Svcs., Inc.*, No. 7:15-cv-00149-RAJ, ECF No. 87 (W.D. Tex. Jun. 20, 2017) (same); *Legros v. Mud Control Equip., Co.*, No. 6:15-cv-01082-RFD-PJH, ECF No. 74 (W.D. La. Mar. 6, 2017) (same); *Riddle v. Detel Wireless, LLC*, No. 1:16-cv-00433-DDD-JPM, ECF No. 31 (W.D. La. Mar. 3, 2017) (same); *Heffernan Bryant v. United Furniture Indus., Inc.*, No. 1:13-cv-246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (same); *Cantu v. Circle Bar A, Inc.*, No. 5:15-cv-00468-XR, ECF No. 52 (W.D. Tex. Jun. 23, 2016) (same); *Wolfe v. Anchor Drilling Fluids USA, Inc.*, No. 4:15-cv -1344 (S.D. Tex. Dec. 7, 2015) (Hoyt, J.) (same); *Green-Johnson v. Fircroft, Inc.*, No. 4:12-cv-01307, ECF No. 50 (S.D. Tex. Apr. 3, 2013) (Rosenthal, J.) (same). *Covey v. Iron Cactus II L.P.*, No. 1:12-cv-00111-SS (W.D. Tex. August 6, 2013) (same).

litigation expenses. For these and remaining costs, Plaintiffs' counsel requests reimbursement of costs and expenses in the amount of $3,430.00.

E.   CONCLUSION

For these reasons, the Court should approve the Settlement Agreement reached by the Parties.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
S.D. Tex. Id. # 1076547
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiffs**

**CERTIFICATE OF CONFERENCE**

Prior to filing this motion, I conferred with TCHP's counsel, who confirmed TCHP was unopposed to the relief sought herein.

*/s/ Matthew S. Parmet*

_____

Matthew S. Parmet